IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| DONIS DENBY   #655223 | § | |
| v. | § | CIVIL ACTION NO. 6:15cv876 |
| WARDEN BOSCO, ET AL. | § | |

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT

The Plaintiff Donis Denby, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. This Court ordered that the case be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. The named Defendants in Denby's original and supplemental complaints are Warden Bosco, Officer Hunt, Officer Cunningham, Major Mitchell, Nurse Lane, Nurse Practitioner Jacinta Assava, Nurse Practitioner Sarah Pierson, Warden Rupert, Warden Richardson, practice manager Pam Pace, Dr. Yoo, Hee-Kwang, J. Ashley, R. Kafte, Sgt. Sgt. Camille, Coffield Director of Nurses B. Burns, Lt. Shaw, Lt. Ferguson, Sgt. Brantley, Sgt. Johnson, and Sgt. Simon.

Of these Defendants, the claims against Hunt, Cunningham, and Bosco have been transferred to the U.S. District Court for the Southern District of Texas, and Denby voluntarily dismissed the claims against Porter, Ashley, Dr. Yoo, Hee-Kwang, R. Kafte, and Camille.

**I. The Plaintiff's Claims and the Martinez Report**

Denby asserts that he was sexually assaulted by Officer Hunt at John Sealy Hospital in Galveston on July 28, 2015. He complains he was subsequently denied proper medical care at the Coffield Unit.

1

The Magistrate Judge ordered prison officials to furnish a *Martinez* Report containing Denby's medical, grievance, and classification records. Denby received a copy of the Report and filed a response.

The medical records contained in the *Martinez* Report indicated that Denby's rectal bleeding was caused by hemorrhoids rather than the alleged anal penetration and Denby's headaches were likely caused by high blood pressure. The Report also showed that Denby has received a considerable amount of medical care, including evaluation by a gastroenterology specialist, although there were also occasions when he was not taken to medical appointments by security staff.

The *Martinez* Report observed that Denby has three strikes under 28 U.S.C. §1915(g) because he has previously filed at least three lawsuits or appeals which were dismissed as frivolous or for failure to state a claim upon which relief may be granted.[1] As a result, Denby may not proceed *in forma pauperis* except upon a showing that he was in imminent danger of serious physical injury as of the date he filed the lawsuit.

In his response to the *Martinez* Report, Denby argued that his medical records showed he had been the victim of deliberate indifference, arguing that he received no medical care for 68 days after the assault and Nurse Practitioner Assava knew the treatment she prescribed for him was ineffective but nonetheless continued to prescribe it. Denby also contended that the hemorrhoids were caused by the anal penetration, the hemorrhoids were bleeding and therefore considered an emergency under TDCJ policy, and the fact that there were occasions when he was not escorted to the medical department showed that he was denied medical care.

---

[1] 28 U.S.C. §1915(g), added by Act of Congress on April 26, 1996 as part of the Prison Litigation Reform Act, provides as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the ground that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

Denby further argued that he does not have three qualifying strikes under 28 U.S.C. §1915(g) because two of the cases counted as strikes were transferred after they had been "brought" within the meaning of 28 U.S.C. §1915(g). Denby also claimed that he met the imminent danger exception to §1915(g).

## II. The Report of the Magistrate Judge

The Magistrate Judge's Report first determined that Denby does have three strikes within the meaning of 28 U.S.C. §1915(g), citing *Denby v. Trent, et al.*, civil action no. 7:11cv157 (N.D.Tex., dismissed March 9, 2015); *Denby v. Windham, et al.*, civil action no. 2:10cv70 (N.D.Tex., May 13, 2011); and *Denby v. Wages, et al.*, civil action no. 2:13cv6 (N.D.Tex., August 29, 2013). Court records show that *Denby v. Wages* was severed out of *Denby v. Trent* because the claims and parties in the severed case were wholly different from those in the original case. The Magistrate Judge stated that "the fact that parties were improperly joined in *Denby v. Trent* and subsequently severed into a new case does not prevent the dismissals of both the original case and the severed case from counting as strikes."

The Magistrate Judge went on to conclude that Denby failed to show he was in imminent danger of serious physical injury at the time of the filing of his lawsuit or the dates he amended it. Although Denby missed some medical appointments and was dissatisfied with the medical care received, the Magistrate Judge determined that these facts alone did not show imminent danger of serious physical injury. Because Denby did not meet the standards of §1915(g), the Magistrate Judge recommended that his *in forma pauperis* status be revoked and that the lawsuit be dismissed.

## III. Denby's Objections to the Report

In his objections, Denby first takes issue with the Magistrate Judge's statement that the parties in *Denby v. Trent* were "improperly joined." He attaches a copy of the transfer order, asserting that the court based its severance and transfer on 28 U.S.C. §§1391(b) and 1404(a), neither of which contain provisions concerning "improperly joined" parties.

3

The Northern District's order of severance and transfer states that Denby's lawsuit presented claims against three defendants relating to the conditions of confinement in the Clements Unit in Amarillo, Texas, and three other defendants relating to the conditions of confinement in the Allred Unit in Iowa Park, Texas. After discussing the venue statute, the Northern District went on to state as follows:

> Defendants Wages, Hutton, and Martinez are located at the Clements Unit in Amarillo, Texas. Plaintiff's claim against the three Defendants arose out of events that occurred in the Clements Unit. None of the events underlying Plaintiff's claims against Wages, Hutton, and Martinez occurred within the Wichita Falls Division and these three Defendants are not located within the geographical boundaries of the Wichita Falls Division.

The court thereupon severed out these claims and transferred them from the Wichita Falls Division to the Amarillo Division, where a new case was opened for them under the style of *Denby v. Wages*.

In *Bernier v. Koenigsmann, et al.*, civil action no. 15-cv-209A, 2017 U.S. Dist LEXIS 21563, 2017 WL 603217 (W.D.N.Y., February 15, 2017), *Report adopted at* 2017 U.S. Dist. LEXIS 38019 (W.D.N.Y., March 16, 2017), the U.S. District Court for the Western District of New York stated as follows:

> Bernier objects that this case should not count as a strike because, prior to transfer to the Southern District of New York, it had been one claim in a different case that he had filed in this District. The Court disagrees. The whole point of severance and transfer is to identify claims that were improperly lumped together with unrelated claims that should have been brought in their own separate cases in the first place. *See Spencer, White, & Prentis Inc. of Connecticut v. Pfizer Inc.*, 498 F.2d 358, 361 (2nd Cir. 1974) (recognizing that 'a claim or counterclaim properly severed from another by virtue of Rule 21 may be ... proceeded with separately (ellipses in original) (internal quotation marks and citations omitted); *see also* 9A Charles Alan Wright, et al., Fed. Prac. & Proc. Civ. §2387 (3rd ed. and 2016 Supp.) ('[S]evered claims become entirely independent actions to be tried, and judgment entered thereon, independently.')

As in that case, Denby's claims against Wages, Hutton, and Martinez were improperly lumped with unrelated claims and should have been brought in their own separate lawsuit to begin with.

4

The Fifth Circuit has explained that severance under Rule 21 creates two separate actions or suits where previously there was only one, and that when a single claim is severed out of a suit, it proceeds as a discrete, independent action and a court may render a final, appealable judgment in either one of the resulting two actions notwithstanding the continued existence of unresolved claims in the other. *United States v. O'Neill*, 709 F.2d 361, 368 (5th Cir. 1983).

Denby brought two unrelated claims in his lawsuit styled *Denby v. Trent*. The U.S. District Court for the Northern District of Texas, Wichita Falls Division, severed out the claims concerning the Clements Unit and transferred those claims to the Amarillo Division, where a new lawsuit was opened. The severance created two separate, distinct, and independent lawsuits, and the dismissals of each of these cases as frivolous counted as separate and distinct strikes.

Denby cites *Harris v. Garner*, 216 F.3d 970, 973 (11th Cir. 2000), in which the Eleventh Circuit held in the context of construing 42 U.S.C. §1997e(e) that a lawsuit is "brought" at the time it is commenced; thus, the physical-injury requirement of §1997e applied to prisoners who were incarcerated when the lawsuit was originally filed, but were no longer in confinement when judgment was rendered some 15 months later. The court explained that "bringing" an action meant its filing or commencement, not its continuation.

Denby argues that in the same way, the severance and transfer represent a "continuing" of his action after the time it was "brought," and thus the two cases should not result in separate strikes. He is incorrect. The severance of his claim created two separate and distinct lawsuits which were handled independently, not a continuation of the earlier-filed one. This contention is without merit.

Denby also cites *Hoffman v. Blaski*, 363 U.S. 335, 343, 80 S.Ct. 1984, 4 L.Ed.2d 1254 (1960), in which the Supreme Court held that under the version of the transfer of venue statute then in effect, the power of the district court to transfer the action to another district did not depend on any wish or waiver of the defendants, but on whether the transferee district was one in which the action might have been brought by the plaintiff. In Denby's case, the claims against the Defendants located in the Amarillo Division of the Northern District of Texas were transferred from the Wichita

Falls Division to the Amarillo Division. Denby offers nothing to show that the severance and transfer was improper. This objection is without merit.

Denby next contends that the severance and transfer of his Amarillo claims was an "elective action" of the transferring court. He maintains that counting a transferred action as a separate strike is prejudicial and unconstitutional because it allows any court to subject a plaintiff to multiple strikes from a single original action. This objection lacks merit because the law is well-established that severed cases proceed independently from the original. Denby cannot evade the reach of §1915(g) by bringing a single lawsuit with multiple unrelated claims and relying on a Rule 21 severance to shield him from acquiring multiple strikes for any components of such a lawsuit which were severed and dismissed as frivolous. The Magistrate Judge properly concluded that Denby has three strikes and Denby's objections in this regard are without merit.

With regard to the "imminent danger" prong of §1915(g), Denby argues that he alleged that he suffered a concussion and the court is required to take his assertion as true. He contends that he showed the symptoms of a concussion and that he was in imminent danger not only from the concussion itself, but also because it caused him to become dizzy, black out, and faint.

As the Magistrate Judge correctly stated, the medical records contain no indication that Denby sustained a concussion. Denby's self-diagnosis or bare assertion of a concussion is insufficient to show imminent danger without medical evidence verifying that the condition exists. *See Aswegan v. Henry*, 49 F.3d 461, 465 (8th Cir. 1995); *accord, Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994) (prisoner's self-diagnosis alone will not support a medical conclusion); *McClure v. Foster*, civil action no. 5:10cv78, 2011 WL 665819 (E.D. Tex., January 7, 2011), *Report adopted at* 2011 U.S. Dist. LEXIS 15437, 2011 WL 941442 (E.D. Tex., February 16, 2011), *aff'd* 465 F.App'x 373, 2012 U.S. App. LEXIS 6385, 2012 WL 1059408 (5th Cir., March 29, 2012).

Similarly, Denby asserts that he suffered from "swelling and infection of the rectum" and "perianal venous thrombosis." He points to nothing in the medical records confirming the existence of these conditions, much less showing that either pose an imminent danger of serious physical

injury. While Denby was diagnosed with bleeding hemorrhoids, the Magistrate Judge properly determined that this condition did not place Denby in imminent danger of serious physical injury. *Harris v. Nink*, 2:13cv304, 2013 U.S. Dist. LEXIS 126747, 2013 WL4777187 (S.D.Ohio, September 5, 2013); *Almond v. Glinski*, civil action no. 15-cv-365, 2015 U.S. Dist. LEXIS 144936, 2015 WL 6454643 (E.D. Wisc., October 26, 2015).

Nor do Denby's complaints of dizziness and blackouts demonstrate imminent danger of serious physical injury so as to overcome the §1915(g) bar. *Pettus v. Esgrow, et al.*, civil action no. 05-cv-6382, 2009 U.S. Dist. LEXIS 3068, 2009 WL116976 (N.D.N.Y., January 16, 2009); *Pettus v. Richards*, civil action no. 06-cv-30, 2008 WL 4371774 (N.D.N.Y., August 28, 2008), *Report adopted* 2008 U.S. Dist. LEXIS 76221 (N.D.N.Y., September 18, 2008), *dismissal after remand* 2009 U.S. Dist. LEXIS 31542 (N.D.N.Y., April 14, 2009).

The medical records show that on August 11, 2015, Denby reported an incident of dizziness and fluid levels were noted behind both tympanic membranes. Medications were prescribed and he was told to return as needed. He was seen in nursing sick call on November 4, 2015, for a complaint of getting dizzy and falling and the nurse referred him to a provider. In summarizing Denby's complaint, the medical record states "c/o getting dizzy and falling in his cell. States occurred around 3 hours ago. Denies having problems like this before." (Docket no. 20-13, p. 7).

On November 9, 2015, Denby was sent to the hospital in Galveston for complaints of left arm tingling and numbness. He told Nurse Practitioner Assava on December 3, 2015, that he became dizzy mostly when he moves positions and when he works out. She noted that he was in no acute distress, his lungs were clear and his cardiovascular system showed regular rate and rhythm with normal S1 and S2 [heart sounds] and no murmur or gallop, no swelling to his extremities, and grossly intact neuro. She gave him a bottom row pass for 30 days, weekly pulse and blood pressure checks, increased his dosage of blood pressure medication, and advised him to make position changes slowly. (Docket no. 20-5, pp. 7-9). Denby's allegations of dizziness and blackouts fail to show imminent danger of serious physical injury at the time of the filing of the complaint.

Denby also asserts he has now learned the cuts and bumps he has felt in his rectum are "colon polyps," which indicate cancer because they are small tumor growths. Denby does not point to any portion of the medical record showing he suffers from colon polyps, much less that such polyps show he has cancer or otherwise threaten imminent danger of serious physical injury. *See, e.g.*, *Caradine/Assabur v. Hubbard,* civil action no. 5:11cv281, 2011 U.S. Dist. LEXIS 150173, 2011 WL 6937196 (E.D.Ark., December 7, 2011, *Report adopted at* 2012 U.S. Dist. LEXIS 370, 2012 WL 10308, E.D.Ark., January 3, 2012, no appeal taken) (complaint that prisoner suffers from colon cancer, sugar diabetes, hypertension, high blood pressure, dislocated deformities in his foot, and tuberculosis did not support a finding that the prisoner was in imminent danger of serious harm); *Brown v. Pa. Dept. of Corrections*, civil action no. 10-0943, 2011 U.S. Dist. LEXIS 9724, 2011 WL 344078 (E.D.Pa., February 1, 2011) (allegation that plaintiff was denied proper medical care and a proper diet for hepatitis C placed him in imminent danger of contracting liver cancer or cirrhosis was not sufficient to overcome the §1915(g) bar).

Denby has plainly failed to show imminent danger of serious physical injury as of the time of the filing of the lawsuit. *See Heimerman v. Litscher*, 337 F.3d 781, 782 (7th Cir. 2003) (allegations of past harm do not suffice; the harm must be imminent or occurring at the time that the complaint or notice of appeal is filed, and the exception refers to "a genuine emergency" where "time is pressing.") His objections are without merit.

## IV. Conclusion

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the Plaintiff objected. *See* 28 U.S.C. §636(b)(1) (District Judge shall "make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.") Upon such *de novo* review, the Court has determined that the Report of the Magistrate Judge is correct and the Plaintiff's objections are without merit. It is accordingly

8

**ORDERED** that the Plaintiff's objections are overruled and the Report of the Magistrate Judge (docket no. 56) is **ADOPTED** as the opinion of the District Court. It is further

**ORDERED** that the Plaintiff's *in forma pauperis* status is **REVOKED** and that the above-styled civil action is **DISMISSED WITH PREJUDICE** as to the refiling of another *in forma pauperis* lawsuit raising the same claims as herein presented, but without prejudice to the refiling of this lawsuit without seeking *in forma pauperis* status and upon payment of the statutory $400.00 filing fee. It is further

**ORDERED** that should the Plaintiff pay the full filing fee within 15 days after the date of entry of final judgment in this case, he shall be allowed to proceed in the lawsuit as through the full fee had been paid from the outset. Finally, it is

**ORDERED** that any and all motions which may be pending in this action are hereby **DENIED**.

**So ORDERED and SIGNED this 11th day of May, 2017.**

Ron Clark, United States District Judge